UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE E. COOLEY,

       Plaintiff,                                      Hon. Janet T. Neff

v.                                                             Case No. 1:18-cv-372

FEDEX FREIGHT, INC, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 63.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants motion be **GRANTED**.

### I.    BACKGROUND

**A.**    **Procedural History**

This case, as Yogi Berra—one of history's notable philosophers—would probably observe, is "déjà vu all over again!"[1] On October 18, 2016, Plaintiff, a former employee of Defendant FedEx Freight, Inc., sued FedEx and three individuals (FedEx personnel) in the Eastern District of Michigan, alleging claims under Title VII of the Civil Rights Act of 1964 (Title VII) and the Americans With Disabilities Act (ADA) (*Cooley* I). A few days later, Plaintiff filed an amended complaint alleging claims of discrimination and retaliation under Title VII and discrimination under the ADA. On August 4, 2017, the Eastern District transferred *Cooley* I to this Court, where

---

[1] The Yogi Book: "I Really Didn't Say Everything I Said" p. 30 (1998).

it was assigned Case No. 1:17-cv-700. Subsequently, Magistrate Judge Carmody issued two Reports and Recommendations, the first recommending that Plaintiff's claims be dismissed against the individual defendants and the second recommending that: (1) Plaintiff be granted leave to amend his complaint by adding new individual defendants and state-law claims; (2) the federal claims be dismissed against the newly-added individual defendants; and (3) the state-law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(2). (*Cooley* I, ECF Nos. 50 and 54.) On February 26, 2018, Judge Neff adopted both Reports and Recommendations and dismissed Plaintiff's state-law claims without prejudice. (*Id.*, ECF No. 57.)

On February 22, 2018, Plaintiff filed a complaint asserting the dispatched state-law claims in Kent County Circuit Court. On April 3, 2018, FedEx filed a notice of removal of the state-court case on the basis of diversity jurisdiction, returning the state-law claims to their place of origin, albeit in a new case. (ECF No. 1.) Subsequently, on March 13, 2019, Magistrate Judge Carmody issued a Report and Recommendation in *Cooley* I recommending that FedEx's motion for summary judgment on Plaintiff's Title VII and ADA claims be granted. (*Cooley* I, ECF No. 71.) On March 13, 2019, Judge Neff adopted the Report and Recommendation, granted FedEx's motion and dismissed Plaintiff's complaint with prejudice. (*Id.*, ECF Nos. 74 and 75.) Plaintiff filed a notice of appeal to the Sixth Circuit, where the case remains pending.

**B.     Facts**

The following facts are taken from Magistrate Judge Carmody's October 12, 2018 Report and Recommendation in *Cooley* I:

> Defendant hired Plaintiff on August 10, 2015. (ECF No. 64-2 at PageID.1004). Plaintiff was hired to work as a part-time "service center support employee." (ECF No. 64-3 at PageID.1050). As part of his employment with FedEx, Plaintiff acknowledged that he was informed of the existence and location of the FedEx Electronic Employee Handbook. (ECF No. 64-3 at PageID.1058). Plaintiff further agreed to "familiarize" himself with the Handbook's contents. (ECF No. 64-3 at PageID.1058). FedEx policy prohibited insubordination, defined as

2

"improper refusal to perform assigned work" or "failure to follow work instructions or meet employee job expectations." (ECF No. 64-3 at PageID.1066). FedEx policy also requires employees to arrive to work "on time as scheduled." (ECF No. 64-3 at PageID.1082).

One of Plaintiff's duties, referred to as billing, required Plaintiff to accurately enter information into a computer. (ECF No. 64-2 at PageID.1010). Plaintiff conceded at his deposition that when performing billing duties, he "just put the information in, and I don't look back. I don't check it. Nothing." (ECF No. 64-2 at PageID.1012). Plaintiff later stated that "I just type the information, and I enter, and I don't worry about it being wrong, because I know that it's right, because I rely on my brain and the medication." (ECF No. 64-2 at PageID.1019). Plaintiff was subsequently counseled, however, on numerous occasions for making errors when performing his billing duties. (ECF No. 64-3 at PageID.1152-59).

Another of Plaintiff's duties, referred to as imaging, required Plaintiff to scan certain documents, such as bills of lading and delivery receipts. (ECF No. 64-3 at PageID.1093-97). Many of the documents to be scanned had to be prepared for scanning by removing staples/paper clips and writing freight bill numbers on each page of a bill of lading. (ECF No. 64-3 at PageID.1093-97). When Plaintiff began working at FedEx it was the responsibility of the employees in imaging to remove the staples/paper clips and write freight bill numbers on the documents to be scanned. (ECF No. 64-2 at PageID.1022). Subsequently, however, FedEx supervisors began instructing the employees performing billing duties to remove the staples/paper clips and write freight bill numbers on the documents to be scanned. (ECF No. 64-2 at PageID.1022-23). Plaintiff disagreed with this change in job responsibilities and refused to comply with such, specifically telling one of his supervisors that he "was not" going to remove the staples/paper clips and write freight bill numbers on the documents to be scanned. (ECF No. 64-2 at PageID.1024, 1043).

Between October 2015 and August 2016, Plaintiff was either late or absent from work on fourteen (14) occasions. (ECF No. 64-3 at PageID.1099-1113). At his deposition, Plaintiff testified that he was often late to work because of his "dedication" to volunteer work he was performing, but that he "wasn't dedicated to" FedEx in this regard. (ECF No. 64-2 at PageID.1032). Plaintiff was also disciplined on numerous occasions for parking in the visitors parking lot instead of the employee parking lot as required by FedEx policy. (ECF No. 64-3 at PageID.1145-50, 1161-62, 1175-77). Plaintiff disregarded the applicable FedEx policy because, in his opinion, "there was ample parking for visitors." (ECF No. 1020).

In August 2016, Plaintiff received a three-day suspension after expressly "refusing a work instruction." (ECF No. 64-3 at PageID.1163-64, 1166-74). Specifically, Plaintiff was instructed to write the fright [sic] bill numbers on certain documents. (ECF No. 64-3 at PageID.1163). Plaintiff refused this instruction "because it was not his job." (ECF No. 64-3 at PageID.1163). Plaintiff further stated that he

3

"would never be doing it in the future." (ECF No. 64-3 at PageID.1163). When Plaintiff was informed that "his behavior was insubordinate," Plaintiff simply "left the office without giving a statement or an explanation for his leaving before his shift was over." (ECF No. 64-3 at PageID.1163).

On two separate occasions in September 2016, Plaintiff again expressly refused to comply with work instructions. (ECF No. 64-3 at PageID.1181-98). Specifically, Plaintiff refused instructions to remove staples from certain billing documents. (ECF No. 64-3 at PageID.1181-98). As a result of these incidents, and because of Plaintiff's many previous incidents of discipline, Plaintiff's employment with FedEx was terminated. (ECF No. 64-3 at PageID.1181-98, 1202).

*Cooley v. FedEx Freight Inc.*, No. 1:17-cv-700, 2018 WL 7577225, at *3–4 (W.D. Mich. Oct. 12, 2018).

## II.    MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    DISCUSSION

### A.    Plaintiff's Response

Before turning to its analysis, the Court briefly addresses Plaintiff's response to Defendants' motion. Plaintiff, a law school graduate, is not the typical pro se plaintiff. Thus, it is questionable whether the Court should extend the traditional rules applicable to pro se litigants

to Plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers"); *Baker v. Chagrin Valley Med. Corp.*, No. C82-122, 1985 WL 445, at *1 n.1 (N.D. Ohio Mar. 22, 1985) (declining to construe the plaintiff-law-school-graduate's pleadings liberally and instead "giv[ing] them the same careful scrutiny accorded to pleadings filed by other law school graduates"). Regardless, Plaintiff's pro se status does not excuse his failure to comply with applicable court rules. *See Frame v. Superior Fireplace*, 74 F. App'x 601, 603 (6th Cir. 2003) ("While pro se litigants are afforded significant leeway, those who proceed without counsel must still comply with the procedural rules that govern civil cases.") (internal citations omitted). Plaintiff did not submit an affidavit or a declaration in support of his response, and although he references a number of exhibits, he fails to attach or submit them. His failure to do so violates Local Civil Rule 7.1(b). *See* W.D. Mich. LCivR 7.1(b) ("When allegations of facts not appearing of record are relied upon in support of or in opposition to any motion, all affidavits or other documents relied upon to establish such facts shall accompany the motion."). In addition, Plaintiff makes numerous factual assertions without support in the record. Plaintiff, as the nonmoving party, has an affirmative duty to point out specific facts in the record to demonstrate that a genuine issue of material fact exists. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Plaintiff has not met this duty. Moreover, Plaintiff's arguments do not qualify as evidence. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Therefore, the Court must decide the motion based upon Defendants' evidence.

  **B.** **Claim and Issue Preclusion**

Defendants argue that Plaintiff's claims in this case are barred by the doctrine of res judicata, or more appropriately, claim preclusion as it is known in the Sixth Circuit, based on this Court's prior grant of summary judgment on Plaintiff's Title VII and ADA claims. *See E.E.O.C.*

5

*v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, (6th Cir. 1999) ("Under federal res judicata, or claim preclusion, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'") (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Plaintiff responds that claim preclusion does not apply because the Court dismissed his state-law claims without prejudice. (ECF No. 73 at PageID.1194.) He has a point. Defendants fail to cite a case in which a federal court's dismissal of state law claims without prejudice under 28 U.S.C. § 1367 resulted in application of claim preclusion based on the federal court's resolution of the federal claims. On this subject, the Michigan Court of Appeals has observed that

> most state and federal courts have held that when the federal claim in a federal action is dismissed before trial and it is clear that the federal court would have declined to exercise jurisdiction over a related state claim that could have been raised in the federal action through pendent jurisdiction, a subsequent action in state court on the state claim that would have been dismissed without prejudice in the prior federal action is not barred by the doctrine of res judicata.

*Bergeron v. Busch*, 228 Mich. App. 618, 627 (1998). In *Knight v. Prime Financial*, No. 313879, 2014 WL 2354673 (Mich. Ct. App. May 14, 2014) (per curiam), the Michigan Court of Appeals, addressing circumstances similar to those in this case, held that state-law claims over which the federal court declined to exercise supplemental jurisdiction "were properly refiled in the circuit court and [were] not barred by res judicata." *Id.* at *2. Of course, because the prior judgment was a federal judgment, the proper inquiry is whether the federal law of issue preclusion applies. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.W. 497, 507–08 (2001)). In *Management Investors v. United Mine Workers of America*, 610 F.2d 384 (6th Cir. 1979), shortly before trial was to commence, the district court granted the defendant's motion for summary judgment on one plaintiff's claims. On the day of trial, the district court, declining to exercise pendent jurisdiction, dismissed the state-law claims of

6

the other plaintiff. *Id.* at 388. In considering whether the district court abused its discretion in declining to exercise pendent jurisdiction over the state-law claims after the other plaintiff voluntarily dismissed its federal claims, the court stated:

> We note that while the dismissal of the state claims precluded their adjudication on the merits in this lawsuit, it did not preclude their adjudication in a state court. And as the court's decision to dismiss the pendent claims was without prejudice, this judgment has no [r]es judicata effect even in a subsequent suit filed in federal court.

*Id.* at 395. *Management Investors* thus appears to affirmatively answer the question of whether claim preclusion bars Plaintiff's state-law claims: it does not.

That does not mean that preclusion has no place in the analysis. Issue preclusion, the related but separate doctrine, does apply. *See Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985) (explaining that the term "res judicata," as used in its "general sense . . . refers to the preclusive effects of former proceedings," while in its more narrow sense it refers to "claim preclusion" and "[c]ollateral estoppel refers to issue preclusion"). And, the Court may raise issue preclusion *sua sponte* because the Court has notice of its own prior decision. Claim preclusion is an affirmative defense, and "[c]ourts generally lack the ability to raise an affirmative defense sua sponte." *Hutcherson v. Lauderdale Cty.*, 326 F.3d 747, 757 (6th Cir. 2003) (citing *Haskell v. Wash. Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)). The Supreme Court has explained, however, that

> "if a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste."

*Arizona v. California*, 530 U.S. 392, 412 (2000), *supplemented*, 531 U.S. 1 (2000) (quoting *United States v. Sioux Nation*, 448 U.S. 371, 432 (1980)); *see also Stinger v. Lennox*, No. 17-10998, 2018 WL 5095047, at *4 (E.D. Mich. Aug. 27, 2018), *report and recommendation adopted*, 2018 WL 4443176 (E.D. Mich. Sept. 18, 2018) (concluding that the court could *sua sponte* raise issue

7

preclusion because it was on notice of its prior decision precluding the plaintiff from contesting his failure to exhaust administrative remedies).

"Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."  *Taylor*, 553 U.S. at 892.  Issue preclusion applies where: (1) the identical issue was raised and actually litigated in a prior proceeding; (2) the determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding.  *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 161 (6th Cir.1996).  Here, all of the requirements of issue preclusion are met with regard to the Court's prior determination in *Cooley* I, applicable to Plaintiff's Title VII and ADA claims, that FedEx had legitimate, non-discriminatory reasons for terminating Plaintiff's employment, which Plaintiff failed to show were merely pretext for unlawful discrimination or retaliation. *Cooley*, 2018 WL 7577225 at *4–5.  This prior determination thus applies to Plaintiff's claims in the instant case to the extent they complain of his termination.

  **C.** **Race Discrimination, Retaliatory and Unlawful Termination, Disability Discrimination, Interference with Plaintiff's Ability to Compete with Individuals Who Are not Disabled (Counts I–IV, VIII)**

Plaintiff alleges discrimination and retaliation claims under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 *et seq.*  Retaliation claims under ELCRA and PWDCRA are analyzed in the same manner as retaliation claims under their federal counterparts, Title VII and the ADA, by applying the familiar burden-shifting

8

approach under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  *See Robinson v. MGM Grand Detroit, LLC*, No. 19-2101, __ F. App'x __, 2020 WL 4283961, at *4 (6th Cir. July 27, 2020).  Similarly, discrimination claims under the ELCRA and PWDCRA are also evaluated under the *McDonnell Douglas* framework.  *See Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 419 (6th Cir. 2015) (PWDCRA claim); *Gold v. FedEx Freight East, Inc.* (*In re Rodriguez*), 487 F.3d 1001, 1007–08 (6th Cir. 2007) (ELCRA claim).  In both retaliation and discrimination claims, the plaintiff must first establish a prima facie case, and if he is able to do so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the adverse action.  *Robinson*, 2020 WL 4283961, at *4; In *re Rodriquez*, 487 F.3d at 1008.  Once the employer meets its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered reasons by the employer were a pretext for retaliation."  *Robinson*, 2020 WL 4283961, at *4.

### 1. Discrimination Claims

Defendants argue that Plaintiff's race and disability discrimination claims fail because Plaintiff cannot establish a prima facie case as to either claim.[3]  To the extent Plaintiff relies on his termination to establish an adverse action, he is bound by this Court's determination in *Cooley*

---

[2] Plaintiff has no direct evidence of race or disability discrimination, so he must establish his claim through circumstantial evidence.

[3] Plaintiff indicates that he has alleged a claim for disparate-impact discrimination.  He alleges no such claim in his complaint.  In a disparate-impact discrimination claim, the plaintiff must show that an employer's facially neutral policy disproportionately burdens a protected class more harshly than others. *Alspaugh v. Comm'n on Law Enf't Standards*, 246 Mich. App. 547, 564 (2001).  Plaintiff has not identified a FedEx policy that disproportionately burdens black or disabled employees.  Plaintiff's claim is based on disparate treatment.  *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (noting that disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait," and that such claims "present the most easily understood type of discrimination") (internal quotation marks and brackets omitted).

I that FedEx terminated his employment for legitimate, non-discriminatory reasons. *Cooley*, 2018 WL 7577225, at *4–5. Plaintiff's discrimination claims also fail to the extent he alleges that changing his job duties, giving him more work than Caucasian employees, and giving him disfavored job functions amounted to adverse employment actions. Materially adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (stating that an adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). Furthermore, "courts must keep in mind the fact that '[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" *Pena v. Ingham Cty. Rd. Comm'n*, 255 Mich. App. 299, 312 (2003) (quoting *Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996)). Here, Plaintiff complains about being required to remove staples and paper clips from bills and writing "pro numbers" (freight bill numbers) on the bills in preparation for imaging (for scanning the documents into the system). Being required to do such *de minimis* tasks does not amount to an adverse employment action. Moreover, it is undisputed that all billers—not just Plaintiff—were told to remove staples and write pro numbers on bills. (ECF No. 63-6 at PageID.1100.) Plaintiff's disagreement with this requirement or his opinion that these tasks should have been performed by the imagers does not make it an adverse action. Finally, although Plaintiff claims other

10

unidentified white employees were treated more favorably than Plaintiff by, for example, being allowed to leave early while Plaintiff was not, Plaintiff offers no evidence to support these assertions.[4]

### 2. Retaliation Claims

Plaintiff's retaliation claim, as alleged, is based on his termination. As explained in detail above, Plaintiff is bound by the judgment in *Cooley* I that FedEx terminated Plaintiff's employment for a legitimate, non-retaliatory reason. Moreover, Plaintiff's assertion that having to remove staples/paper claims and write pro numbers on bills is not an adverse action.

> Generally, intensified scrutiny of plaintiff's job performance by his supervisor would not be considered an adverse employment action, nor would actions such as having to remove his treadmill from the police department workout room, having his shift changed, having his "dailies" returned for allegedly petty and trivial reasons, being removed from special assignments, having other officers allowed to act as his supervisor, or having his request to attend a seminar rejected while other officers were allowed to attend be considered adverse employment actions.

*McAllister v. Twp. of Bridgeport*, No. 326801, 2016 WL 3749394, at *4 (Mich. Ct. App. July 12, 2016). Apart from his termination, Plaintiff has not alleged, let alone presented evidence of, an adverse employment action. His retaliation claim thus fails.

### D. Failure or Refusal to Accommodate (Count V)

The PWDCRA generally provides that "a person shall accommodate a person with a disability for purposes of employment, public accommodation, public service, education, or

---

[4] Plaintiff argues that FedEx's failure to challenge his claim for unemployment benefits somehow undermines FedEx's legitimate reason for terminating Plaintiff's employment. (ECF No. 73 at PageID.1207.) However, Plaintiff is bound by *Cooley* I regarding his termination. Moreover, determinations by the Michigan Unemployment Insurance Agency "are privileged, confidential, and inadmissible in any court proceeding." *Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 3958468, at *4 (E.D. Mich. Sept. 8, 2011) (citing Mich. Comp. Laws § 421.11(a)(1); Mich. Admin. Reg. 421.10(1)).

housing unless the person demonstrates that the accommodation imposes an undue hardship."[5] Mich. Comp. Laws § 37.1102(2).  To establish a prima facie case for failure to accommodate, a plaintiff must demonstrate that:  "(1) []he is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) []he requested an accommodation; and (5) the employer failed to provide the necessary accommodation."  *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).

Although Defendants convincingly argue that Plaintiff's insubordination and excessive absenteeism rendered him unqualified for the position, the Court need not consider that issue because Plaintiff's claim fails on the fifth element.  Plaintiff testified that Human Resources advisor Tamara McElroy and Defendant Thacker suggested to Plaintiff on two occasions that he might want to consider seeking accommodations for his ADHD.  (ECF No. 63-2 at PageID.909.) Initially, Plaintiff did not pursue accommodations because he "wanted to be treated like everyone at FedEx" and to be judged on his performance and not seen "as like special."  (*Id.* at PageID.914.) Plaintiff finally made a formal request for accommodations in December 2015, at the suggestion of McElroy and Thacker.  Thacker suggested that Plaintiff use earbuds to reduce distractions. (*Id.* at PageID. 909.)  FedEx allowed Plaintiff to use earphones and, eventually, earbuds.  (*Id.* at PageID.911–12.)  In addition, FedEx accommodated Plaintiff by moving his start time to provide Plaintiff the maximum window of productivity while he was on his medication.  (*Id.* at PageID.912.)  Plaintiff admitted that these accommodations worked and that he was successful in

---

[5] Michigan courts have observed that the ADA and the PWDCRA "share the same purpose and use similar definitions and analyses, and both [state and federal] courts have relied on the ADA in interpreting the PWDCRA."  *Chiles v. Mach. Shop, Inc.*, 238 Mich. App. 462, 472 (1999).

performing his job functions going forward. (*Id.* at PageID.912–13.) Plaintiff did not request any other accommodation. (*Id.* at PageID.913–14.) Accordingly, Defendants did not fail or refuse to provide a reasonable accommodation.[6] (ECF No. 73 at PageID.1204 (Plaintiff admitting that "going forward after the accommodation request the Plaintiff was successful at his job").)

### E. Disability-Based Hostile Work Environment Claim (Count VII)

To establish a hostile work environment claim under the PWDCRA, a plaintiff just show: (1) he was disabled; (2) he was subjected to communication or conduct on the basis of his disability; (3) the communication or conduct was unwelcome; and (4) the unwelcome conduct or communication was intended to interfere, or in fact substantially interfered, with his employment or created an intimidating, hostile, or offensive work environment.[7] *Mazur v. Wal-Mart Stores, Inc.*, 250 F. App'x 120, 127–28 (6th Cir. 2007) (citing *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 412 n.5 (2005) (reciting elements of sexual harassment claim)). A work environment is hostile if "a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Quinto v. Cross & Peters Co.*, 451 Mich. 358, 369 (1996) (quoting *Radtke v. Everett*, 442 Mich. 368, 394 (1993)). Factors to be considered are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23

---

[6] Although Plaintiff failed to complete his FedEx education modules by the assigned deadline, FedEx accommodated Plaintiff, and he successfully completed his education. (ECF No. 63-2 at PageID.902.)

[7] To the extent Plaintiff intended to assert a hostile environment claim based on race, he has forfeited the claim by failing to address it in his response. *See Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124–25 (6th Cir. 2018).

(1993). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not amount to a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998)).

Plaintiff fails to present sufficient evidence to establish a viable hostile work environment claim. The only evidence Plaintiff cites for this claim are two interactions that he had with his supervisor, Kevin Swaney, in September and October 2015, regarding his failure to complete his educational requirements. Plaintiff testified that he had been asked to come to the education room and to speak about the issue, but Plaintiff ignored the request. (ECF No. 63-2 at PageID.901.) Plaintiff alleges that Swaney intentionally embarrassed him by demanding in front of other employees that Plaintiff work on completing his education after 8:00. (*Id.* at PageID.901.) Plaintiff continued to argue with Swaney even after Swaney asked Plaintiff to "get up and come back here." (*Id.*) Although Plaintiff told Swaney that he could not work on his education because his Adderall had worn off, nothing about this exchange indicates that Swaney was harassing Plaintiff because of his disability. Rather, Plaintiff had not completed his educational training within the required time, and Swaney was ensuring that Plaintiff completed his required training. Although these conversation might have been heated or uncomfortable for Plaintiff, they fall far short of showing that Plaintiff was subjected to a hostile work environment because of his disability.

### F. Intentional Infliction of Emotional Distress, Negligent Hiring, Retention and Supervision and Tortious Interference with Plaintiff's Employment (Counts VI, IX and X)

In his response to the motion for summary judgment, he argues only a single paragraph for each count, as follows:

> The rate and frequency of which Plaintiff was being targeted are such that a person of Plaintiff's impairment should not have to experience such treatment in the workplace. Any and all attenuating circumstances and facts in this case support

14

> Plaintiff's claims for Intentional Infliction of Emotional Distress. To subject a person of a different race to different treatment based on his race is arguably extreme and outrageous and results in trauma.
>
> The defendants' disrupted the work contract relationship between the Plaintiff and his employer. These actions benefited the employer and resulted in the Plaintiff being terminated from employment, resulting in lost wages and other damages. Had it not been for the actions of the Defendants' [sic] Plaintiff would not have been terminated.
>
> The Defendants' [sic] are responsible for the work product and conduct of their subordinates, this includes discipline. The Defendants' [sic] ignored what was happening to the plaintiff and took no action to stop the conduct, resulting in the plaintiff's loss of employment. As such, the Defendants' [sic] are responsible for the damage and the loss that the plaintiff has incurred.

(ECF No. 73 at PageID.1219–20.)[8] As the Sixth Circuit often remarks, "[w]e have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (citation and internal quotation marks omitted).

As to each claim, Plaintiff offers nothing more than a thread of an argument without citing facts or law to support the claim. For example, Plaintiff fails to support his claim that he was being "targeted" because of his disability at such a "rate and frequency" that could be considered "extreme and outrageous conduct." *Worthy v. Materials Processing, Inc.*, 433 F. App'x 374, 376 (6th Cir. 2011) (citing *Doe v. Mills*, 212 Mich. App. 73, 91 (1995)). Moreover, Plaintiff has asserted these claims against multiple Defendants; he fails to explain who did what that would constitute intentional infliction of emotional distress, tortious interference with a contract or negligent hiring, supervision, or retention. Finally, as the Court has explained, *Cooley* I precludes

---

[8] Likewise, for each of these claims, Plaintiff presents a single paragraph in his Amended Complaint incorporating other allegations. (ECF No. 9, PageID.163-64.)

Plaintiff from contesting the validity of his termination. Accordingly, Plaintiff has waived these claims.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 63) and dismiss Plaintiff's amended complaint with prejudice.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: August 20, 2020                                        /s/ Sally J. Berens
                                                              SALLY J. BERENS
                                                              U.S. Magistrate Judge